UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALFONSO FRATARCANGELI,

      Plaintiff,

v.                         CASE No. 8:04-CV-2812-T-TGW

UNITED PARCEL SERVICE, etc.,
and LIBERTY MUTUAL
INSURANCE COMPANY, etc.,

      Defendants.

_____

O R D E R

THIS CAUSE came on to be heard upon the defendant's Dispositive Motion for Summary Judgment (Doc. 50) and the plaintiff's opposition thereto (Docs. 55, 66).  The plaintiff has alleged in a three-count complaint claims of employment retaliation.  Because the plaintiff's seven-page response failed adequately to address his barrage of vague and non-specific claims, he was directed to set forth in a further response specific information designed to permit a proper evaluation of his claims.  The plaintiff's five-page supplemental response fails to comply with the court's

Order.  This failure, by itself, warrants dismissal of the plaintiff's claims.  In all events, because the claims were not sufficiently developed and substantiated, the plaintiff has failed to show that they have merit. Accordingly, the defendant's motion for summary judgment will be granted.

I.

Plaintiff Alfonso Fratarcangeli is a delivery driver who has been employed by the defendant United Parcel Service ("UPS")  since 1979 (Doc. 51-2,[1] pp. 22-23).[2]  The defendant is a package delivery and business logistics service (Doc. 51-8,  ¶3).

As a delivery driver, the plaintiff is also a member of the International Brotherhood of Teamsters ("the Union")(id., ¶5).  The plaintiff's employment with the defendant is governed by the Collective Bargaining Agreement ("CBA") entered into between the Union and the defendant (see Doc. 70-2,  ¶3).

---

[1]To the extent that they are inconsistent, page citations to the plaintiff's deposition refer to the pagination on the deposition, not the court document page number.

[2]The case was originally filed against two defendants: UPS, and Liberty Mutual, UPS's workers' compensation insurance carrier.  The plaintiff's case against Liberty Mutual was resolved, and Liberty Mutual was dismissed as a defendant in this case (Docs. 19, 20).  Therefore, "defendant" refers to UPS only.

Following a 1996 on-the-job injury, the plaintiff in 1999 sued the defendant for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), the Florida Civil Rights Act ("FCRA"), and Florida's workers' compensation law (see Doc. 51-2, p. 15). In August 2001, the plaintiff and defendant agreed to a settlement of that lawsuit (id., pp. 15, 24).

In March 2002, the plaintiff suffered an on-the-job injury to his right knee (Doc. 5, ¶8; Doc. 51-11, ¶11). The plaintiff was initially placed on light duty work, but in early June it became apparent that he had a long-term injury (Doc. 51-11, ¶11).[3] He had surgery in June 2002 for this injury, and remained on workers' compensation leave until October 2003 (id., ¶¶ 11, 12).

On October 13, 2003, Dr. Fabio F. Fiore authorized the plaintiff to return to full duty work, effective October 22, 2003 (id., ¶12, p. 17, Ex. 3). The plaintiff returned to his regular duties on that date (id., ¶¶ 12, 13).

The plaintiff alleges that, since his return to work in October 2003, he has been subjected to criticism and harassment by the defendant's

---

[3]Light duty work, or "TAW" (temporary alternative work) assignments, are provided for employees who meet certain criteria when such work is available (see Doc. 51-11, ¶4).

supervisors and management in retaliation for filing the 1999 EEOC charge and lawsuit (Doc. 5, ¶¶ 9-12; Doc. 5-2, Ex. A).  On January 23, 2004, the plaintiff filed a retaliation charge with the EEOC, asserting that he was "constantly harassed by management, in that they have been ignoring [his] seniority rights in regards to overtime work and workload" and has "been denied payment of benefits" (Doc. 5-2, Ex. A).

In March and April 2004, the plaintiff suffered on-the-job injuries to his left and right knee, respectively (Doc. 51-11, ¶14, Exs. 2, 4; Doc. 51-2, pp. 27-28).  In connection with his March 2004 injury, the plaintiff was granted light duty work assignments in April and July 2004 (Doc. 51-11, ¶14).  However, the plaintiff alleges that, during the week ending April 24, 2004, he was required to perform work beyond his light duty restriction of lifting twenty pounds (Doc. 65-2, Exs. 16, 18; Doc. 51-4, pp. 129-30).

Further, the plaintiff contends that treatment for his injuries was unnecessarily delayed and that his choice of a physician to treat his injuries was unreasonably denied (see Doc. 51-5, pp. 193-94). In this regard, the plaintiff filed administrative workers' compensation petitions with the state of Florida, alleging that the defendant and Liberty Mutual mishandled his

workers' compensation claims and improperly denied him benefits (see Doc. 51-6, Ex. 7). On May 5, 2005, a Florida Judge of Compensation Claims awarded the plaintiff most of the relief he sought (id.).

Additionally, in connection with his injuries the plaintiff filed grievances with the Union concerning the alleged delay in his medical treatment, a loss of workers' compensation benefits, and a denial of temporary alternative work (see Doc. 51-8, Ex. 9; Doc. 51-12, ¶11). These claims were settled in January 2007 for a monetary award and vacation benefits (Doc. 51-12, ¶12).[4]

As a result of his 2004 knee injuries, the plaintiff underwent another knee surgery and rehabilitation, and his physician authorized him to return to full duty work on October 31, 2005 (Doc. 51-11, ¶15, Ex. 4, pp. 26-27). The plaintiff returned to work on November 7, 2005, after successfully completing a functional capacity evaluation ("FCE") and a Department of Transportation physical (Doc. 51-11, ¶¶ 15, 16).

---

[4]In this regard, the plaintiff, the defendant and the Union entered into a handwritten, informal settlement agreement in satisfaction of "all claims for monetary compensation raised by the underlying grievances for lost wages and contractual entitlements" (Doc. 51-12, ¶12; Ex. 4). The parties stated their intention to enter into a formal, final settlement, and the plaintiff has received the settlement funds from UPS, but the plaintiff has failed to execute the formal settlement agreement and release (Doc. 51-12, ¶13). Further, it is unclear whether the settlement resolves all claims underlying the grievances, or only those for monetary damages.

On November 7, 2005, the defendant assigned a supervisor, Ricky Hays, to conduct on-the-job supervision of the plaintiff, which is a normal procedure for drivers returning from workers' compensation leave (Doc. 51-13, ¶8; Doc. 52-2, ¶¶ 5, 6).  On November 9, 2005, the plaintiff began working at approximately 4:30 a.m., and requested a meal break at 10:30 a.m. (Doc. 55-2, ¶10).  Hays stated that he declined the request because there remained on the delivery vehicle time sensitive packages due to be delivered by 11:00 a.m. (id.; Doc. 52-2, ¶7).

When the plaintiff insisted on taking his break, Hays called business manager David Bridges for guidance, and Bridges directed Hays to tell the plaintiff he would be terminated for insubordination and failure to follow instructions if he took the twenty- or thirty-minute break (Doc. 51-13, ¶¶ 9, 10; Doc. 52-2, ¶9).  The plaintiff nonetheless decided to take a twenty- or thirty-minute break and Hays, in accordance with Bridges's instructions, terminated the plaintiff's employment (Doc. 51-2, p. 56;  Doc. 52-2,  ¶11). The plaintiff filed a grievance regarding his termination (Doc. 51-8, Ex. 6). In accordance with the CBA, the plaintiff continued to work for the defendant pending resolution of the grievance of his termination, and his discharge was

retracted in February 2006 (id., ¶11; Ex. 7)(CBA permits an employee to remain on the job without a loss of pay pending the outcome of his grievance).

A Union member who believes that the defendant has violated one of the provisions of the CBA may file a grievance, and that complaint is resolved in accordance with the grievance process set forth in the CBA (Doc. 70-2, Ex. 1).  As relevant here, the plaintiff has filed grievances alleging that the defendant mishandled his workers' compensation claims, required him to complete tasks beyond his doctor's light duty restrictions, unreasonably terminated his employment, failed timely to correct payroll shortages, did not give him a reserved parking spot to commemorate his twenty-year safe driving record, and gave him either too much, or too little, work (see Doc. 51-6, p. 54; Doc. 51-7, pp. 1-37).  The majority of the grievances have been resolved in the plaintiff's favor.

The plaintiff filed the amended three-count complaint in this case on January 6, 2005.  He alleges that, in retaliation for filing his 1999 disability discrimination lawsuit and unspecified workers' compensation claims, the defendant subjected him to criticism and harassment, and denied him benefits to which he was entitled under Florida's workers' compensation statute and the CBA (Doc. 5).

The defendant filed a motion for summary judgment on all of the plaintiff's claims (Doc. 50). In response to the defendant's twenty-five page summary judgment memorandum, the plaintiff filed a seven-page memorandum, four pages of which merely recited legal standards (Doc. 55). In light of the numerous grievances the plaintiff asserted over a period of several years, and the convoluted nature of the claims, it was unclear which actions the plaintiff contended were adverse (among other things).

Oral argument was subsequently conducted on the motion (Doc. 63). To clarify the claims, plaintiff's counsel was asked how many adverse actions the plaintiff was alleging in the lawsuit, to which plaintiff's counsel stated, "I don't have a tally" (id., p. 32). Further, in response to my question of who had a retaliatory animus against the plaintiff, he vaguely stated, "[m]any people at UPS" (id., p. 24).

The thrust of the plaintiff's argument during the hearing was that the defendant stonewalled the plaintiff's efforts to obtain treatment and benefits to which he was entitled under the workers' compensation law for his knee injuries in 2004 (id., pp. 33-35). However, plaintiff's counsel subsequently stated that he did not wish to base his case on the vague and general contention that the defendant improperly responded to his workers'

compensation claims, as he was admittedly made whole financially for these injuries by a Florida Judge of Compensation Claims and the 2007 grievance settlement (id., pp. 34-35).  Thus, it became obvious during oral argument that the plaintiff's contentions could not reasonably be deciphered and that supplemental briefing was necessary to determine the plaintiff's claims, and the evidentiary basis for those claims.

In this connection, the plaintiff was directed to file a supplemental memorandum setting forth the following information (Doc. 60):

> 1.  A list that identifies with particularity each challenged employment action.  (It is noted that the inclusion of an employment action on this list does not act as an amendment to the complaint, so that challenged employment actions that are not fairly encompassed within the amended complaint are subject to rejection for failure to properly allege them in the pleading);
>
> 2. With regard to each challenged employment action, identify the protected activity that allegedly prompted the employment action;
>
> 3.  Explain how each challenged employment action is adverse within the meaning of Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405 (2006);
>
> 4.  Identify the decisionmaker(s) involved in each of the challenged employment actions; and

> 5.  State the evidence (including citations to the record) that supports the contention that the challenged employment action was in retaliation for the protected activity.

The Order further advised the plaintiff "that any employment actions that are not identified in the supplemental memorandum, as well as any listed employment action for which these requirements are not satisfied, will be deemed abandoned" (id., p. 2).  The defendant was permitted to file a reply memorandum (id., p. 3).

## II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  F.R.Civ. P. 56( c).  Material facts are those over which disputes "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  The movant bears the burden of establishing the absence of a dispute over material facts.  Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

Where the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991). Alternatively, the movant may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438. If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437.

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, supra, 941 F.2d at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v.

Bridgestone/Firestone, Inc., supra, 989 F.2d at 469.  Any reasonable doubts about the facts are to be resolved  in favor of the party opposing  the motion for summary judgment.  Id.

### III.

A.  The plaintiff has filed a five-page supplement specifying five employment actions he relies upon as the basis for his retaliation claims in this lawsuit (Doc. 66).   Thus, any other contentions raised in prior court documents or the evidentiary record are deemed abandoned (Doc. 60).

The defendant filed a reply to the plaintiff's supplement (Doc. 69) which argues, among other things, that none of the alleged actions constitute adverse employment actions within the meaning of  Burlington Northern & Santa Fe Ry. Co. v. White, supra, 126 S.Ct. at 2405, and that the plaintiff has failed to comply with the Order's directive in paragraph five to "[s]tate the evidence (including citations to the record) that supports the contention that the challenged employment action was in retaliation for the protected activity."

The plaintiff clearly did not comply with the Order's requirement to state the evidence showing causation between the protected activity and the challenged employment action.  Further, the plaintiff identifies as an adverse

action the November 2005 termination even though termination is not mentioned, or fairly encompassed, within the amended complaint. The defendant has expressly objected to consideration of the November 2005 termination for this reason (id., p. 11 n.4).

Further underscoring the lack of clarity in the plaintiff's claims is the plaintiff's contention, raised for the first time in his supplemental summary judgment response, that the adverse employment actions were motivated by the January 2004 EEOC charge, which is the administrative complaint underlying this lawsuit. However, as recently as oral argument on this motion, plaintiff's counsel maintained that the most recent protected activity under the ADA (and, concomitantly, the FCRA) was the 2001 settlement of his 1999 disability discrimination lawsuit (Doc. 63, pp. 28-29; see also Doc. 55, p. 2). The defendant has also expressly objected to consideration of the 2004 protected activity as a motivating factor because it was not raised in a timely manner (Doc. 69, p. 7 n.3).

The plaintiff's failure to comply with the court's Order leaves the plaintiff's claims undeveloped and unsubstantiated (although they are at least, more or less, identified and limited in number). It is not the court's duty to scour the record, articulate and support a claim, and then evaluate it for merit.

The plaintiff has already been given an extraordinary second opportunity to avoid defeat by the defendant's motion for summary judgment. There is no justification for giving him a third chance. Consequently, the plaintiff's failure to comply with the court's Order leaves the plaintiff's claims insufficiently developed and warrants dismissal. See Goodison v. Washington Mutual Bank, 2007 WL 1455055 (11th Cir. 2007)(unpub. dec.); Von Poppenheim v. Portland Boxing and Wrestling Commission, 442 F.2d 1047 (9th Cir. 1971), cert. denied, 404 U.S. 1039 (1972).

In all events, a consideration of the plaintiff's meager presentation reveals that none of the claims can withstand the defendant's motion for summary judgment. Thus, for that reason also, the claims should be dismissed.

B. The plaintiff's complaint alleges employment retaliation in violation of the ADA, the FCRA, and Florida's workers' compensation law (Doc. 5). The ADA and FCRA prohibit an employer from discriminating against an employee who complained of, or asserted a charge of, unlawful disability discrimination. 42 U.S.C. 12203(a); §760.10(7), Fla. Stat. Additionally, Florida's workers' compensation law precludes an employer from threatening to discharge, intimidating, or coercing any employee because

he has filed a valid claim for compensation or attempted to claim compensation under the workers' compensation law.  §440.205, Fla. Stat.

The plaintiff has not presented any direct evidence of retaliation. Rather, he is apparently proceeding with his claim using the framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which applies to retaliation claims under the ADA, FCRA, and Florida's workers' compensation law.  See, e.g., Durley v. APAC, Inc., 236 F.3d 651, 657 (11th Cir. 2000); Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998), cert. denied, 525 U.S. 1000 (1998);  Russell v. KSL Hotel Corp., 887 So.2d 372, 379 (Fla. App. 2004).

In order to establish a prima facie case of retaliation, a plaintiff must prove the following elements: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision.  Higdon v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004).  The causal link is construed broadly, so a plaintiff "merely has to prove that the protected activity and the adverse action are not completely unrelated."  Id. at 1220.  Thus, this element is satisfied if the plaintiff provides "sufficient evidence of [the decisionmaker's] knowledge of the protected

expression and that there was a close temporal proximity between this awareness and the adverse action." Id. (internal quotations omitted).

The burden then shifts to the defendant to rebut the presumption of retaliation by producing a legitimate reason for the adverse employment action. Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991). The presumption of retaliation then drops from the case and it is the plaintiff's burden to "present significant probative evidence" that the reasons offered by the employer were a pretext for retaliation. Id.

In this regard, the plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels v. Atlanta Independent School System, 408 F.3d 763, 771 (11th Cir. 2005). The Eleventh Circuit has cautioned (Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000)):

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

The plaintiff alleges that the defendant took five adverse employment actions against him in retaliation for engaging in statutorily protected activity.  As explained below, the plaintiff has not created a genuine issue of fact as to whether any of these employment actions constitute unlawful retaliation.

1.  The plaintiff alleges first that, in retaliation for filing his 1999 lawsuit against the defendant, "UPS refus[ed] to return Plaintiff to work in October, 2003 without Functional Capacity Exam (FCE) despite 100% return to work by treating physician," which "unnecessarily prolong[ed] Plaintiff's absence from work [and resulted in] lost income" (Doc. 66, pp. 1, 2).

This claim fails to state an adverse employment action because the factual basis for the claim is erroneous; the plaintiff was not required to undergo an FCE, and his return to work was not delayed when he returned from workers' compensation leave in October 2003.  Further, requiring an employee to submit to an FCE under these circumstances would not, as a matter of law, constitute an adverse employment action. Moreover, even if this action could somehow be considered adverse, the plaintiff has presented no probative evidence that it was a pretext for retaliation.

The plaintiff had been on workers' compensation leave due to a knee injury from the summer of 2002 until October 2003 (Doc. 51-11, ¶12). In a doctor's note dated October 13, 2003, the plaintiff's physician authorized the plaintiff to return to full duty work as of October 22, 2003 (id., Ex. 3). The plaintiff testified at his deposition that Tom Acquaviva, his manager, and Mitzy Horne, a nurse for the defendant, told him that, notwithstanding his physician's clearance to return to work, he would have to undergo an FCE prior to returning to work (Doc. 51-2, pp. 36, 38).

The defendant contends that it has no record that the plaintiff was directed to undergo an FCE prior to returning to work in October 2003 (Doc. 51-11, ¶13).[5]   Regardless, the defendant states, and the evidence unequivocally shows, that the plaintiff was not required to undergo an FCE as a prerequisite to return to work in October 2003, and the defendant returned to work on the date authorized by his physician (id., ¶13, Ex. 3; Doc. 51-10, p. 9, 10/22/2003).

---

[5]In August 2003, the plaintiff underwent an FCE in order to determine whether a course of therapy would be fruitful (Doc. 51-11, ¶13).  This is unrelated to the plaintiff's contention that he was told in October 2003 he would have to undergo an FCE.

Thus, the plaintiff himself testified that the defendant "let [him] return to work without the FCE" (Doc. 51-2, p. 42).[6]  Furthermore, although the plaintiff testified vaguely that being told to submit to an FCE delayed his return to work (Doc. 51-3, p. 65), the defendant has submitted unrefuted time records showing that the plaintiff returned to work on October 22, 2003 (see Doc. 51-10, p. 9, 10/22/03), the date that his physician authorized him to perform full duty work (Doc. 51-11, Ex. 3).

A plaintiff alleging retaliation has suffered an adverse employment action if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, supra, 126 S. Ct. at 2415 (internal quotations omitted).  Although the anti-retaliation provision encompasses more than "actions that affect the terms and

_____

[6]The plaintiff gives inconsistent statements regarding the resolution of this dispute. At his deposition he testified that "the doctor sent another note stating that there was no need for me to take the FCE.  And then my attorney contacted I believe Liberty Mutual, and between their conversations they let me return to work without the FCE" (Doc. 51-2, p. 42; see also p. 45). However, the plaintiff states in his affidavit that he "was told by Tom [Acquaviva] that if I reported to work I would be sent home.  Despite Tom's threat I reported to work and was not sent home" (Doc. 55-2, p. 6).

conditions of employment," it "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 2412-13, 14.

The requirement of material adversity is meant to distinguish significant from trivial harms. Id. at 2415; see also Rutledge v. Suntrust Bank, 2008 WL 161796 at *2 (11th Cir. 2008)(unpub. dec.)("[t]he acts must be material and significant and not trivial"). Thus, "an employment action is not adverse merely because the employee dislikes it or disagrees with it." Higdon v. Jackson, supra, 393 F.3d at 1219. Moreover, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington Northern & Santa Fe Ry. Co. v. White, supra, 126 S.Ct. at 2415. Thus," [c]ontext matters" and "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships" in the workplace. Id.

Any purported directive that the plaintiff submit to an FCE in October 2003 was effectively rescinded and, contrary to the plaintiff's assertion, he did not lose any income because his return to work was not delayed (Doc. 66, p. 1). Therefore, the employment action would not be viewed as materially adverse by a reasonable employee in the circumstances.

Burlington Northern & Santa Fe Ry. Co. v. White, supra, 126 S. Ct. at 2415; Rutledge v. Suntrust Bank, supra, 2008 WL 161796.  This is because it would not dissuade a reasonable employee from filing a charge of unlawful discrimination. Burlington Northern & Santa Fe Ry. Co. v. White, supra.

Furthermore, even if the plaintiff had been required to undergo an FCE that delayed his return to work, it would not, as a matter of law, constitute an adverse employment action under these circumstances.  Thus, the defendant presented unrefuted evidence that it and its workers' compensation insurance carrier, Liberty Mutual, regularly require FCEs when employees return from a lengthy workers' compensation leave involving significant injuries or invasive treatment, as it helps to determine whether an injured employee has sufficiently recovered to return safely to work performing his regular job duties (Doc. 51-11, ¶¶ 7, 21).  Here, the plaintiff was out of work on workers' compensation leave for more than one year, during which time he underwent surgery.  A reasonable employee would not be dissuaded from reporting unlawful discrimination because he has been directed to undergo an FCE, as it protects not only the defendant, but also the employee, from unnecessary injury.  See Burlington Northern & Santa Fe Ry. Co. v. White, supra, 126 S.Ct. at 2415.

Moreover, even if this action could somehow be construed as adverse, the plaintiff has not presented any probative evidence that it was a pretext for unlawful retaliation. Thus, there is nothing suspect about requiring a delivery driver who regularly engages in heavy duty work to undergo a comprehensive FCE to confirm fitness for duty, instead of relying solely on a conclusory physician's note. See Pennington v. City of Huntsville, 261 F.3d 1262 (11th Cir. 2001)("a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, as long as the reason is one that might motivate a reasonable employer").

On this issue, the plaintiff merely quibbles with the defendant's reasoning for ordering an FCE. Thus, the plaintiff's contention that an FCE is not required by Florida's workers' compensation law (Doc. 66, p. 1) does not show that the defendant's business decision to have its employees undergo FCEs is a pretext for retaliation. See Pennington v. City of Huntsville, supra. Furthermore, the plaintiff has not supported his conclusory allegation in his deposition that others have not been required to undergo an FCE (Doc. 51-2, pp. 41, 42) with evidence of even one similarly situated person in this regard. Embry v. Callahan Eye Foundation Hospital, 2005 WL 2009046 (11th Cir.

2005)(unpub. dec.)("the comparator must be nearly identical to the plaintiff to prevent courts from second guessing a reasonable decision by the employer"); <u>Wilson</u> v. <u>B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1091 (11th Cir. 2004).  Consequently, the plaintiff has clearly failed to carry his burden to show that, if there had been a requirement of an FCE, it would have been a pretext for retaliation.[7]

In sum, the plaintiff has not created a genuine issue of material fact regarding whether the rescinded demand that the plaintiff submit to an FCE in October 2003 was retaliatory.

2.   The second employment action the plaintiff alleges was unlawful retaliation is a "[w]ritten warning concerning attendance issued on January 26, 2004 by Brian Wolfe, supervisor" (Doc. 66, p. 2; Doc. 65-2, p. 3).

---

[7]Finally, it is noted that the four-year gap between the 1999 lawsuit, which the plaintiff claims as the retaliatory motivation for the defendant's action, and the 2003 purported demand for an FCE, essentially defeats any contention of retaliation.  <u>See</u> <u>Everson</u> v. <u>Coca-Cola Co.</u>, 2007 WL 2088839 (11th Cir. 2007)(unpub. dec.)(<u>citing</u> <u>Donnellon</u> v. <u>Fruehauf Corp.</u>, 794 F.2d 598, 601 (11th Cir. 1986)(when computing temporal proximity, the date of the protected activity is the filing of the lawsuit, not its resolution). The plaintiff suggests that this time gap should be disregarded because the plaintiff was out of work for a substantial portion of this period (Doc. 66, p. 2).  The plaintiff has not cited any authority supporting the notion that it is appropriate to assume that over this period the supervisor harbored a grudge against the plaintiff for the 1999 lawsuit.  It is not necessary to pursue this point further, however, since this claim is factually baseless at its outset.

The plaintiff grieved this warning with the Union, and it was reduced to "a talk with" (id.; Doc. 51-9, p. 8).[8]

The written warning concerned absences, and the plaintiff was, in fact, absent from work for several days (Doc. 51-3, pp. 118-19; Doc. 65-2, p. 3). However, he alleges that the warning was retaliatory because he presented doctor's notes which excused his absences (id.).

This claim does not state a retaliation claim because the warning letter, which was subsequently reduced to a "talk with," does not constitute an adverse employment action. Thus, the plaintiff presents no evidence of lost pay or benefits, job reassignment, or stigma attendant to this warning. In fact, the plaintiff does not refer to any harm. Burlington Northern & Santa Fe Ry. Co. v. White, supra, 126 S. Ct. at 2414 (a plaintiff is protected "not from all retaliation, but from retaliation that produces an injury or harm").

The only adversity cited by the plaintiff is that the warning allegedly "placed Plaintiff in greater jeopardy of more serious discipline if a second incident occurred" (Doc. 66, p. 2). However, the asserted impact of an employment action "cannot be speculative," Clark v. Potter, 2007 WL

---

[8]The plaintiff does not include as evidence the warning letter, or state the number of days that he was absent, or when the absences occurred.

1244195 at *1 (11th Cir. 2007)(unpub. dec.), and the plaintiff has not argued that he subsequently suffered more serious disciplinary action as a result of this attendance warning.

Therefore, at best, this discipline is a trivial harm that had no materially adverse effect upon the plaintiff.  See Burlington Northern & Santa Fe Ry. Co. v. White, supra, 126 S. Ct. at 2414-15; see, e.g., Clark v. Potter, supra, 2007 WL 1244195 at *2 (a warning letter which had no effect on the plaintiff's employment is not an adverse action).  The triviality of this warning is underscored in this setting, where there is a contentious relationship between the defendant and the Union, and  disciplinary warnings are frequently grieved by Union members (see Doc. 70-2, Ex. 1).  See Burlington Northern & Santa Fe Ry. Co. v. White, supra, 126 S. Ct. at 2415 (the significance of any given act of retaliation will often depend upon the "surrounding circumstances, expectations and relationships");   Byrd v. Auburn University Montgomery, 2008 WL 624025 at *1 (11th Cir. 2008)(unpub. dec.)("ordinary tribulations of the workplace...are not actionable").

In sum, under these circumstances, the receipt of a warning letter for unacceptable attendance would not dissuade a reasonable employee from

filing a charge of unlawful discrimination or retaliation. Accordingly, the plaintiff has failed to establish that he suffered an adverse employment action. See Burlington Northern & Santa Fe Ry. Co. v. White, supra.

Moreover, even if the warning letter were construed as an adverse action, the plaintiff has failed to present significant probative evidence that the warning letter was a pretext for retaliation. The plaintiff relies on his doctor's notes, which excuse his absences due to illness, as evidence of pretext (Doc. 51-3, pp. 118-19).[9] However, the plaintiff has not shown that Wolfe, the supervisor that gave him the warning, was aware that the absences were excused by a physician.

Thus, the plaintiff presents evidence that "UPS was provided with three doctors notes for the days I was absent from work with a serious illness" (Doc. 65-2, p. 3, Ex. 12). However, the plaintiff must present

_____

[9]The plaintiff also alleged in the Union grievance that "[n]umerous drivers have missed as much or more days than me and have not been given warning letters" (Doc. 65-2, p. 3, Ex. 12). The plaintiff does not assert this argument in his supplemental memorandum in support of causation (Doc. 66, p. 2). Regardless, this conclusory statement is insufficient to show pretext. Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989)("[m]ere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment"). Thus, the plaintiff had to support this contention with evidence of similarly situated employees who had not engaged in protected activity and did not receive a warning. Embry v. Callahan Eye Foundation Hospital, supra, 2005 WL 2009046 (the comparator must be nearly identical to the plaintiff to prevent the courts from second-guessing a reasonable decision by the employer); Wilson v. B/E Aerospace, Inc., supra, 376 F.3d at 1091.

evidence that the decisionmaker, not just someone in the company, was aware that his absences were excused by a physician in order to raise an inference of pretext in this circumstance.  See Bass v. Bd. of County Comm'rs, Orange County, Fl., 256 F.3d 1095, 1119 (11th Cir. 2001).  Otherwise, the physician's notes show, at best, that Wolfe erroneously gave him a warning letter, which is not cognizable.  See Elrod v. Sears, Roebuck & Co., supra, 939 F.2d at 1470-71; Roberts v. Design & Mfg. Services, Inc., 2006 WL 20538 at *3 (11th Cir. 2006)(unpub. dec.)(quoting Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984)("an employer may [discipline] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason")) .

In sum, the plaintiff's warning letter fails to state an actionable retaliation claim because it is not an adverse action.  Further, the plaintiff has failed to present significant probative evidence that the attendance warning was a pretext for unlawful retaliation.  Therefore, the plaintiff's attendance warning does not state a viable claim of retaliation.

3.  The  plaintiff alleges next that the defendant failed to correct in a timely manner payroll shortages in retaliation for engaging in protected

activity (Doc. 66, pp. 2-3).   In this regard, the plaintiff makes a general allegation that delays in correcting eighteen payroll shortages, primarily concerning holiday and vacation pay, that occurred over a period of more than two years, are retaliation for engaging in protected activity (id., p. 3; Doc. 51-12, ¶3).[10] On this contention, in particular, the deficiencies resulting from the plaintiff's failure to comply with the Order directing a detailed response become especially pronounced.

The defendant has presented evidence that payroll shortages, and a delay in correcting those shortages, are not unique (Doc. 51-12, ¶8).  Thus, the defendant has adduced evidence that, "[d]ue to high volume and general systemic errors in calculating employee attendance and leave status, many [of the defendant's] employees have been impacted by inadvertent payroll errors in the last several year[s]" (id.).  The defendant explained further (id.; see id., Ex. 3):

> [P]ayroll shortages on a nationwide scale became such a point of contention in the late 1990's that in negotiating the most recent version of the National Master Agreement, the Union requested and was granted a special penalty in Article 17.  Article 17 now provides that if [the defendant] fails to correct

---

[10]The plaintiff cites to nineteen grievances in support of this contention, but one pertains to workers' compensation benefits paid by Liberty Mutual.

a reported payroll shortage by the affected employee's second workday following the report, [the defendant] must pay the employee a penalty equal to ½ of the employee's daily hours at the employee's regular rate of pay for each full pay period in which the shortage is not paid.

With regard to the plaintiff, the defendant asserts that "[the plaintiff's] multiple periods of workers' compensation leave no doubt led to most of the payroll errors about which [the plaintiff] filed grievances" (Doc. 51-12, ¶9; see also Doc. 51-13, ¶¶ 4, 5).  Thus, Bridges, a UPS business manager, explained (Doc. 51-13, ¶¶ 4, 5):

Because [the plaintiff] had been on workers' compensation leave status for a significant period of time, his attendance records were confusing.  As a result, when he would report payroll shortages to me and the other Supervisors and Managers in the Northeast center, it was extremely difficult to determine whether there was, in fact, a shortage and, if so, to correct it within the time allowed by Article 17.  After each notice (most of which concerned vacation and holiday pay), I would run a payroll history to try to determine whether [the plaintiff] was entitled to the pay he was claiming he had been shorted.  Further, I had to get Human Resources and the Payroll department involved to help determine his vacation and holiday entitlements in light of his workers' compensation leave.

...

Because [the plaintiff] also filed grievances requesting Article 17 payments as soon as the time

period for resolving pay shortages had passed, his
notices and grievances began stacking up one upon
another and it became nearly impossible to sort out
what [the plaintiff] was owed in terms of vacation
and holiday pay and Article 17 penalties.

The plaintiff, although alleging that the delays in correcting
payroll shortages were retaliatory, has not presented any significant probative
evidence rebutting this legitimate nonretaliatory explanation.  However, even
before the issue of pretext is reached, the plaintiff's claim fails because he has
not presented a prima facie case of retaliation regarding the payroll shortages.

The plaintiff makes a blanket allegation that resolution of
eighteen payroll shortages that occurred over a two-year period were all
unreasonably delayed in retaliation for engaging in protected activity (see
Doc. 66, p. 3).  However, the plaintiff's conclusory contention of retaliation
is not probative evidence.  Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560,
1563 (11th Cir. 1989).  In this connection, the plaintiff must identify, for each
payroll shortage, the decisionmakers and evidence of the decisionmakers'
knowledge of the protected activity.  See Benefield v. Fulton Co., Ga., 2005
WL 1006847 at *5 (11th Cir. 2005)("[a]t a minimum ... a plaintiff must
establish that the employer was actually aware of the protected expression at
the time it took adverse employment action"); Brungart v. Bellsouth

Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000), cert. denied, 532 U.S. 1037 (2001)("[a] decision maker cannot have been motivated to retaliate by something unknown to him").  The plaintiff, however, has not even satisfied the basic requirement to identify the decisionmakers involved in the delayed resolution of his payroll shortages.

The plaintiff has identified only Bridges as responsible for the delays in resolving the plaintiff's payroll shortages (Doc. 66, p. 3), even though the plaintiff alleges involvement of several managers (see, e.g., Doc. 51-4, pp. 139-40), and some of the payroll shortages occurred months prior to Bridges's tenure (see Doc. 51-13, ¶2).  Furthermore, the resolution of a particular payroll shortage involved more than just a particular supervisor; individuals from payroll and human resources departments may have contributed to the delay, as well as the persons involved in the grievance process (see id., ¶4; Doc. 70-2, Ex. 1).

In fact, the plaintiff does not even know who is responsible for the delayed resolution of some of the payroll shortages (see, e.g., Doc. 51-3, p. 120)(payroll shortage for a personal holiday in 2002 was an act of retaliation even though he does not know who made the initial decision not to pay it); Doc. 51-4, pp. 121, 122 (the plaintiff "suspects" that Acquaviva is

responsible for vacation pay shortage); Doc. 51-5, p. 182 (payroll shortages are retaliation even though he cannot recall any of the managers who would have been responsible); Doc. 51-4, p. 141 ("I think Russell was ... one of the people); id., pp. 159-60 (payroll shortage for vacation pay was retaliation even though he does not know who is responsible for the error)). It is patently insufficient for the plaintiff to claim as retaliatory an employment action when he does not know who is responsible for it and, therefore, cannot show that the action was motivated by a retaliatory animus.

Moreover, the plaintiff's identification of Bridges as a decisionmaker does not help this claim, as the plaintiff has not identified which payroll shortages Bridges was responsible for, has not cited to evidence of Bridges' knowledge of the plaintiff's protected activities, and has not shown a temporal proximity between the two. See Higdon v. Jackson, supra, 393 F.3d at 1219; Silvera v. Orange Co. School Bd., 244 F.3d 1253, 1262 (11th Cir. 2001), cert. denied, 534 U.S. 976 (2001)("discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent"). It is the plaintiff's, not the court's, responsibility to cull through the payroll shortages and identify the payroll shortages for which there is an evidentiary basis to claim that their resolution was unreasonably delayed in

retaliation for engaging in protected activity.  See Bald Mountain Park, Ltd. v. Oliver, supra, 863 F.2d at 1563 ("[m]ere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment"); Henderson v. Waffle House, Inc., 2007 WL 1841103 at *4 (2007)(unpub. dec.)(same).  Accordingly, the plaintiff has failed to create a genuine issue of fact regarding his contention that delays in resolving his payroll shortages were retaliatory because he did not satisfy his prima facie case with regard to any of them.[11]

Moreover, as previously explained, the defendant has come forward with a legitimate nonretaliatory reason for the payroll shortages. Specifically, it has presented evidence that such shortages were a commonplace problem in its business.  In fact, the Union negotiated a provision imposing penalties for that problem.

---

[11]In light of the plaintiff's vague showing, it is doubtful that the plaintiff's claim states an adverse employment action. Thus, a payroll shortage would seemingly not dissuade a reasonable employee of the defendant from filing a charge of unlawful discrimination where, as here, payroll shortages are an ordinary tribulation of the defendant's workplace and the defendant pays the employee significant monetary compensation for the delay.  See  Burlington Northern & Santa Fe Ry. Co. v. White, supra, 126 S.Ct. at 2415.  Notably, the plaintiff testified that he was paid $10,000 to $20,000 in monetary penalties for these delays (Doc. 51-4, p. 141).  See id. at 2414 (an individual is protected "not from all retaliation, but from retaliation that produces an injury or harm").

The plaintiff has not adduced any evidence which remotely suggests that this reason was a pretext for retaliation. Rather, the plaintiff's response is limited to his conclusory belief that the defendant should have "simply pa[id]" the plaintiff instead of "forc[ing] the grievances through the entire grievance process" which took "many months" (Doc. 66, p. 3). It is noted that, contrary to the plaintiff's contention, many of the alleged payroll shortages were not "forced ... through the entire grievance process" but were resolved at the local level (see, e.g., Doc. 51-9, pp. 2, 27, 38, 54, 69). Regardless, the plaintiff's conclusory contention that it took too long to resolve the payroll shortages does not satisfy the plaintiff's burden of producing significant probative evidence that the defendant's actions were a pretext for retaliation. See Rutledge v. Suntrust Bank, supra, 2008 WL 161796 at *1 ("a plaintiff's conclusory allegations, without more, are insufficient to show pretext"); Bald Mountain Park, Ltd. v. Oliver, supra, 863 F.2d at 1563 ("[m]ere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment"); Henderson v. Waffle House, Inc., supra, 2007 WL 1841103 at *3.

Of course, despite the failure to show pretext, the plaintiff could nevertheless prevail if he could carry the ultimate burden of proving

retaliation.  The plaintiff, however, has come forward with no meaningful evidence of retaliation, and, in fact, cannot even establish a prima facie case of retaliation.

Moreover, the plaintiff's allegation of retaliation is strongly contradicted by the substantial monetary penalties the defendant incurs for payroll delays (see Doc. 51-12, Ex. 3).  Thus, the plaintiff testified that he was entitled to four hours of pay for each pay period that passed without correction of the grieved payroll shortage (Doc. 51-4, p. 141). In this connection, the plaintiff testified that the defendant has paid him thousands of dollars in penalties (id.).[12]  The payment of such penalties is certainly not the way to go about committing an act of retaliation.

For these reasons, the plaintiff's claim regarding payroll shortages fails at each step of the McDonnell Douglas test.

4.    The plaintiff also contends that his employment was terminated in November 2005 in retaliation for engaging in protected activity (Doc. 66, pp. 3-4).[13]  The plaintiff's pleadings do not mention this contention,

---

[12]For example, a dispute over entitlement to six hours of work resulted in a settlement in which the plaintiff was paid the six hours of work plus sixty-four hours of pay in penalties (Doc. 51-9, p. 36).

[13]As indicated, it was a "working termination," meaning that the plaintiff continued to work during the pendency of his grievance.  The termination was subsequently

and an allegation of retaliatory termination is not fairly encompassed in the amended complaint.

The amended complaint alleges as adverse employment actions "harassment," and the denial of entitlements under Florida's workers' compensation statute and the CBA (Doc. 5).  The termination did not occur until November 2005, approximately ten months after the filing of the amended complaint.  In this circumstance, the proper procedure would have been for the plaintiff to file a motion to amend the complaint to add this new contention.  However, no such motion was filed.  Rather, the plaintiff argued this contention in his response to the defendant's summary judgment motion.  Such an approach  is clearly improper under Eleventh Circuit law.  <u>Gilmour</u> v. <u>Gates, McDonald and Co.</u>, 382 F.3d 1312, 1314-15 (11th Cir. 2004); <u>Cooley</u> v. <u>Great Southern Wood Preserving</u>, 2005 WL 1163608 at **2-3 (11th Cir. 2005)(unpub. dec.).

A plaintiff "may not amend h[is] complaint through argument in a brief opposing summary judgment." <u>Gilmour</u> v. <u>Gates, McDonald and Co.</u>, <u>supra</u>, 382 F.3d at 1315.  The efficiency and judicial economy that permit

rescinded.

liberal pleadings under Rule 8(a), F. R. Civ. P., are inapplicable after discovery has commenced.  Id.  Rather, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. Rule 15(a)."[14]  Furthermore, the Order regarding supplemental briefing states that "inclusion of an employment action on this list does not act as an amendment to the complaint," and warned the plaintiff that any allegation not fairly encompassed within the amended complaint was subject to dismissal  (see Doc. 60, ¶1).

In short, the November 2005 termination is not fairly encompassed within the amended complaint, and the defendant has expressly objected  to its consideration on this basis (Doc. 69, p. 11 n.4).  Therefore, because the plaintiff has failed to raise this claim in accordance with the Federal Rules of Civil Procedure, it is appropriate to disregard it.

Furthermore, even if this claim is considered as part of this lawsuit, the plaintiff has failed to state a cognizable claim.  First, the

---

[14]An exception to this rule is that issues not raised in the pleadings may be treated as if they were properly raised when they are tried by express or implied consent of the parties under Rule 15(b), F.R. Civ. P., or are included in a pretrial order.  Cooley v. Great Southern Wood Preserving, supra, 2005 WL 1163608 at *3;  Steger v. General Electric Co., 318 F.3d 1066, 1077 n.11 (11th Cir. 2003).  This rule does not apply if the party expressly objects to its consideration. Id.  This case is not at the trial stage, and the defendant has expressly objected to consideration of this new claim (Doc. 69, p. 11 n.4).

termination claim cannot be considered under the ADA or FCRA because the plaintiff has failed to show that he exhausted his administrative remedies.  See Fry v. Muscogee Co. School Dist., 2005 WL 2596880 at *1 (11th Cir. 2005); §760.11, Fla. Stat.

In this respect, there is no indication that a subsequent EEOC charge was filed (and a right-to-sue letter issued) pertaining to the November 2005 termination.  Further, the November 2005 termination is a discrete adverse employment action which is unrelated to the harassment and denial of entitlements alleged in the January 2004 EEOC charge (Doc. 5, Ex. 2).  See Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1279-80 (11th Cir. 2004)("a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," and "allegations of new acts of discrimination are inappropriate" in a judicial complaint); Minix v. Jeld-Wen, Inc., 2007 WL 1828259 at **7-8 (11th Cir. 2007)(unpub. dec.), cert. denied, ___ U.S. ___, 2008 WL 423591 (2008).  In fact, the termination did not even occur until more than one year after the issuance of the right to sue letter (see Doc. 5, Ex. 2, p. 2).  Therefore, the exhaustion requirement is not satisfied by the January 2004 EEOC charge.  See id.  Accordingly, the court lacks jurisdiction over the

contention that the November 2005 termination violated the ADA or FCRA.
See, e.g., Cain v. Geren, 2008 WL 64007 at *3 n. 2 (11th Cir. 2008)(lack of
jurisdiction over new contention of retaliation because the plaintiff did not
administratively exhaust the claim).[15]

Moreover, the claim is not cognizable under any of the relevant
statutes -- the FCRA, ADA, or §440.205, Fla. Stat. -- because the plaintiff has
not stated a prima facie case or created a genuine issue of material fact
regarding whether the termination was pretextual.  Thus, the plaintiff argues
that Bridges and Hays terminated him in retaliation for the "1999 ADA/FCRA
lawsuit; January 2004 EEOC charge; filing workers comp claims," but does
not cite to evidence showing the decisionmakers' awareness of the protected
activities (Doc. 66, p. 3).[16]  See Benefield v. Fulton Co., Ga., supra, 2005 WL
1006847 at *5 (a plaintiff must establish that the employer was actually aware
of the protected expression at the time it took adverse employment action).

---

[15]There is no exhaustion requirement under §404.205, Fla. Stat.

[16]The plaintiff mentions that he had told the decisionmakers two days before the
termination that he had a follow-up workers' compensation doctor's appointment on
November 9, 2005 (Doc. 66, p. 4).  However, the plaintiff does not assert that this is
"protected activity" (see id.).  Further, the plaintiff has presented no legal authority, and
the court did not locate any, that a doctor's appointment constitutes protected activity.

Furthermore, assuming that these decisionmakers were aware of the plaintiff's protected activity, the plaintiff has failed to show its temporal proximity to the termination. <u>Higdon</u> v. <u>Jackson</u>, <u>supra</u>, 393 F.3d at 1219. When using temporal proximity to show causation, the time between the actions must be "very close." <u>Thomas</u> v. <u>Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1364 (11th Cir. 2007). Here, the most recent protected activity occurred eleven months prior to the termination, which is clearly insufficient to show temporal proximity.[17] <u>Id</u>. ("three month period, without more, does not rise to the level of 'very close'"); <u>Clark County School Dist.</u> v. <u>Breeden</u>, 532 U.S. 268, 273-74 (2001)(three- to four-month gaps are insufficient); <u>Higdon</u> v. <u>Jackson</u>, <u>supra</u>, 393 F.3d at 1221 (three-month gap insufficient to establish a causal relationship).

Moreover, the plaintiff has failed to present significant probative evidence that the proffered reason for the termination, the plaintiff's insubordination and failure to follow instructions, was a pretext for retaliation. In this connection, the plaintiff's supervisor, Hays, averred that, around 10:30 a.m. on November 9, 2005, the plaintiff requested to take a twenty- or thirty-

_____

[17]The plaintiff does not identify the dates of all the alleged protected activities. The most recent appears to be the plaintiff's petition for workers' compensation benefits filed in December 2004 (<u>see</u> Doc. 51-11, Ex. 7).

minute break, and that he declined that request because it would have interfered with the delivery of time sensitive packages that needed to be delivered by 11:00 a.m. (Doc. 52-2, ¶7).  When the plaintiff continued to insist that he take his  twenty- or thirty-minute break, Hays called Bridges, the center's business manager, for guidance (id., ¶9; Doc. 51-13, ¶9).  Hays told Bridges that the plaintiff "wanted to take his meal break prior to delivery of all the time sensitive packages on the car that UPS had committed to deliver by a certain time" (Doc. 51-13, ¶9).  Consequently, Bridges  instructed Hays "to tell [the plaintiff] that he would be terminated for insubordination and failure to follow instructions if he were to take a 20-30 minute break" (id., ¶10).  Hays averred that, "[p]ursuant to Bridges' instruction, I informed [the plaintiff] that he would be terminated for insubordination and failure to follow instructions if he insisted on taking a 20-30 minute break"  (Doc. 52-2, ¶11).  When the plaintiff again insisted on taking the break, Hays informed the plaintiff that he was terminated (id.).

Thus, the record indisputably shows that the plaintiff was insubordinate and failed to follow instructions when he defied his supervisor's directive to delay his break.  However, the plaintiff argues that the  supervisor unreasonably refused his request for a twenty- or thirty-minute break based on

the false assertion that there were time sensitive packages on the delivery vehicle that needed to be delivered by 11:00 a.m.  The plaintiff avers that all time sensitive packages were delivered by 10:30 a.m. (Doc. 55-2, p. 2, ¶10; p. 4).

Importantly, however, the plaintiff does not dispute that Bridges was told that there were time sensitive packages on the delivery vehicle. Furthermore, there is no evidence that Bridges disbelieved Hays's report that there were time sensitive packages on the vehicle.  Moreover, Bridges's termination of the plaintiff's employment was precipitated by the plaintiff's insistence on taking this break while there were purportedly time sensitive packages in the delivery vehicle (see Doc. 51-13, ¶¶ 9-10).

Therefore, even accepting the plaintiff's testimony that there were no time sensitive packages on the vehicle, this evidence only shows that Bridges terminated the plaintiff based on erroneous information relayed to him by Hays.  This circumstance does not raise an inference of retaliation. See Elrod v. Sears, Roebuck & Co., supra, 939 F.2d at 1470-71; Hawkins v. Ceco Corp., 883 F.2d 977, 980 n. 2 (11th Cir. 1989), cert. denied, 495 U.S. 935 (1990)(that the employee did not in fact engage in misconduct is irrelevant to

the question whether the employer believed that the employee had done wrong).

"An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Roberts v. Design & Mfg. Services, Inc., supra, 2006 WL 20538 at *3. Therefore, in this circumstance the pretext inquiry "is limited to whether [the decisionmaker] believed that [the plaintiff] was guilty [of violating a work rule] and, if so, whether this belief was the reason behind [the plaintiff's] discharge." Elrod v. Sears, Roebuck & Co., supra, 939 F.2d at 1470; see also Roberts v. Design & Mfg. Services, Inc., supra, 2006 WL 20538; Hawkins v. Ceco Corp., supra, 883 F.2d at 980. Here, the plaintiff has not presented any evidence that Bridges did not honestly believe Hays's report that the plaintiff was being insubordinate by insisting on taking a break when there were time sensitive packages on the vehicle. Further, the plaintiff has no probative evidence that this reported insubordination did not motivate Bridges's decision to terminate the plaintiff's employment.  Thus, the plaintiff's evidence that there were no time sensitive packages shows, at best, that Bridges's termination of the plaintiff's employment was erroneous, not retaliatory.

In sum, the plaintiff has failed to state a prima facie case for a retaliatory termination due to a lack of temporal proximity, or to show that the proffered reason for his termination was a pretext for retaliation.  In all events, this claim is foreclosed by the plaintiff's failure to allege it in a complaint.

5.  The plaintiff's final contention is that the defendant forced him to work in excess of physical limitations imposed upon him by the company physician following an injury to his left knee on March 5, 2004 (Doc. 66, pp. 4-5).  The defendant construes this claim to be attempting to assert that it delayed the plaintiff's  medical treatment for his injury and, correspondingly, his return to work from workers' compensation leave (Doc. 69, p. 15).  The defendant argues that such a claim is not actionable under §440.205, Fla. Stat., because the plaintiff's claim is intertwined with, and foreclosed by, his adjudicated contention that medical treatment he was entitled to under Florida's workers' compensation law was unreasonably delayed.

The defendant's reading of the plaintiff's claim is certainly reasonable.  The plaintiff's contention that he was forced to perform beyond his medical restrictions consists of five sentences, three of which refer to a

delay in medical treatment (Doc. 66, pp. 4-5).[18]   Further, the plaintiff's allegations of harm from violating work restrictions are intertwined with allegations of the same harm being caused by a delay in medical treatment (Doc. 51-5, pp. 193-94).  Therefore, such a claim is inextricably intertwined with the plaintiff's allegation that the defendant and Liberty Mutual delayed his medical treatment.  Moreover, such an intertwined claim is not actionable under §440.205, Fla. Stat., because the administrative workers' compensation claim system is the exclusive remedy for the mishandling of workers' compensation claims, see Wilkerson v. Florida Power & Light Co., 2002 WL 31553548 at *4 (M.D. Fla. 2002)(unpub. dec.); Montes de Oca v. Orkin Exterminating Co., 692 So.2d 257, 259 (Fla. App. 1997), and those claims have been resolved in that system.

Even if, however, the claim is more broadly construed to allege a claim of retaliation based upon directions to exceed work restrictions (although the word "retaliation" is not even mentioned), the plaintiff has clearly not shown a prima facie case of retaliation.  This is another particularly telling example of the plaintiff's failure to take advantage of the "golden

---

[18]The plaintiff has filed grievances and administrative petitions with the state of Florida regarding this harm and they have been resolved in his favor.

opportunity" (the defendant's term (Doc. 69, p. 1)) to demonstrate a claim that deserves to survive summary judgment.   Thus, the plaintiff has not meaningfully attempted to comply with the five requirements set out in the Order for supplemental memoranda.   The plaintiff's response did not appropriately specify the protected activity and decisionmakers (Doc. 60, ¶¶ 2, 4); a listing of several in each category is not much of a help.  Further, there was no attempt to explain how the challenged employment action is adverse within the meaning of <u>Burlington Northern & Santa Fe Ry. Co.</u> v. <u>White</u>, <u>supra</u>, 126 S. Ct. 2405 (<u>id.</u>, ¶3).[19]

Furthermore, the plaintiff did not "[s]tate the evidence (including citations to the record) that supports the contention that the challenged employment action was in retaliation for the protected activity" (Doc. 60, ¶5). Not only was there no such statement, but the citations to the record consisted merely of four pages of the plaintiff's deposition and four grievances (one of which was a duplicate) which, since the grievances were not under oath, are

---

[19]This could be a tricky issue.  Thus, the allegation is that the defendant imposed a twenty-pound lifting restriction and apparently the plaintiff's supervisors directed him to perform tasks that exceeded that limitation. Seemingly, however, the plaintiff, who is well-experienced in the grievance process, would think that he could not be punished if he refused to comply with the supervisor's directions that were contrary to limitations imposed by the company.  These circumstances warrant a discussion of whether the employment action is adverse within the meaning of <u>Burlington Northern</u>.

not appropriately considered for the truth of matters stated therein.  <u>See</u> Rule 56(e), F. R. Civ. P.  Because, as these circumstances show, the plaintiff could not be bothered to develop and substantiate a claim on this point, there is no reason to expect the court to do so.

The little that the plaintiff has stated on this contention clearly does not set forth a prima facie case of retaliation.  The allegation that the plaintiff was told by a supervisor (or two) to perform tasks that exceeded his job restrictions does not inherently suggest retaliation.  Rather, the natural inference that flows from such an order is that the supervisor(s) desired the work to get done.  Consequently, a direction to carry out work in excess of restrictions does not, without more, indicate a retaliatory animus.  The same is true, even if, as the plaintiff asserts, the action was "callous" (Doc. 66, p. 5).

While a direction to perform work in excess of job limitations could be retaliatory, other circumstances are needed to show that.  In this case, as explained, the plaintiff has not made any such showing.  For example, the plaintiff has not attempted to establish temporal proximity of a protected activity and the allegedly improper work order.  In fact, there is evidence that the EEOC charge was filed on January 23, 2004 (Doc. 51-6, p. 10), and the directive to perform tasks in excess of job limitations was issued on April 23

and 24, 2004 (see Doc. 65-2, Exs. 16, 18).   This three-month gap, as demonstrated earlier, does not support an inference of retaliation.  If the record contains a closer time frame between a protected activity and an order to work beyond job restrictions, the plaintiff has failed to identify it.

Along the same lines, the plaintiff has not set forth in the supplemental memorandum any evidence showing that a supervisor who issued such a work order had knowledge of a pertinent protected activity. Without such knowledge, the supervisor obviously could not be engaged in retaliation.

In addition, an inference of retaliation cannot be predicated on communications between the plaintiff and a supervisor since the plaintiff has not set forth what was said in those exchanges.   Moreover, the only conversation reflected in the portion of the deposition that was cited by the plaintiff was clearly a joke.   Thus, when the plaintiff complained to a supervisor about having to deliver 150-pound packages despite having a 20-pound weight restriction, the supervisor said he would send help and instructed the plaintiff "to lift 20 pounds of the 150-pound package" (Doc. 51-4, p. 130). This comment does not support an inference of a retaliatory animus, and the

plaintiff has not specified any other statement that was made in connection with the direction to perform work tasks in excess of job restrictions.

For these reasons, the plaintiff's cursory presentation on this issue is clearly insufficient to raise an inference of retaliation.  Therefore, since the plaintiff has not stated a prima facie case, the claim should be dismissed.

It is, therefore, upon consideration

ORDERED:

That the defendant's Motion for Summary Judgment (Doc. 50) be, and the same is hereby, GRANTED, and the Clerk shall enter judgment for the defendant, dismissing all claims.  The Clerk shall thereupon CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 26th day of March, 2008.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE